## O'BRIEN v. LASHAR et al. *

## SAME v. ANDERSON et al.

(Circuit Court of·Appeals, Second Circuit.   May 9, 1921.)

No. 226.

1. **Corporations ⊂⇒561(1)—Receiver not appointed merely to collect money.**
   Equity will not appoint a receiver for an insolvent corporation, with powers limited to the collection of unpaid stock subscriptions, or moneys embezzled or converted by an officer.

2. **Courts ⊂⇒327—Amount involved held insufficient to give jurisdiction to federal court.**
   In a suit in equity for the appointment of a receiver of an insolvent corporation, to sue for two sums of money, one of $500 and the other of $700, alleged to have been embezzled, the amounts alleged were not sufficient to confer jurisdiction on the United States District Court.

3. **Corporations ⊂⇒320(8)—Stockholder's bill held insufficient for failure to show efforts to secure redress.**
   In a stockholder's suit for the appointment of a .receiver for an insolvent corporation, to sue for money alleged to have been embezzled, allegations that one of the defendants appropriated certain sums, and in his report as treasurer falsely showed a disbursement of money were not sufficient under equity rule 27 (old rule 94 [29 Sup. Ct. xxxvii]), which requires an allegation setting forth efforts of plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the cause of his failure to obtain such action.

4. **Corporations ⊂⇒320(7)—In stockholder's suit for receiver to collect unpaid stock, fraud held not alleged.**
   In a suit by stockholder for the appointment of receiver to collect money due for stock in a corporation, allegations to the effect that the defendants, as officers, had failed to collect for stock for which they had subscribed, and that they altered and amended the records of the · corporation, and had changed a certain by-law concerning the majority necessary in voting, are not sufficient allegations of fraud to support the suit.

5. **Corporations ⊂⇒320(4)—Bill to redress frauds merely not entertained, when corporation insolvent.**
   Equity will not entertain a stockholder's, suit merely to redress fraud of the directors, if the fraud has produced insolvency, as it should then wind up the company.

6. **Corporations ⊂⇒553(1)—Federal court held authorized to appoint receiver to collect stock subscriptions, if amount involved is sufficiently large.**
   Under Gen. St. Conn. 1918, § 3443, providing that stockholders' bill for dissolution and the appointment of receiver to wind up corporation may be maintained for fraud or gross mismanagement of corporate functions, and section 3432, authorizing the directors· to call subscriptions, the United States District Court may appoint a receiver for an insolvent corporation to collect money due on stock, when the officers fraudulently refuse to make such collections, if the amount involved is sufficiently large to be within the court's jurisdiction.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 256 U. S. —, 42 Sup. Ct. 51, 65 L. Ed. —.

Appeal from the District Court of the United States for the District of Connecticut.

Suits by James J. O'Brien against Walter B. Lashar and others and against Percy P. Anderson and others. From decrees dismissing the bills, plaintiff appeals. Affirmed.

See, also, 266 Fed. 215; 272 Fed. 1023; 273 Fed. 520, 521.

On the same day O'Brien filed the two bills above entitled; both have been dismissed as the result of motions under equity rule 29 (33 Sup. Ct. xxvi); such motions being the equivalents of special demurrers. Both suits arise out of O'Brien's dissatisfaction with the conduct of his fellow and majority shareholders in the two defendant corporations, and in each proceeding the defendants are the corporation itself and all the shareholders other than the plaintiff O'Brien.

The substance of what may be called the Land Company Case is this:

That corporation was formed by plaintiff, Lashar, and P. P. Anderson under the laws of Connecticut, with power (substantially) to deal in and improve real estate and buy and sell building supplies and material. The capital stock consists of 500 shares, at $100 par each. It is alleged that O'Brien took 200 shares and paid for them by a conveyance of real estate worth $20,000. Lashar and P. P. Anderson each subscribed for 150 shares, "to be paid for in cash." It is alleged that P. P. Anderson, as treasurer of the Land Company, "by false and fraudulent pretenses and statements" induced O'Brien as secretary to "participate in the issuance" to all the said incorporators, including himself, of certificates of stock "which state on their face that they are fully paid and nonassessable."

The bill avers that Lashar and P. P. Anderson have paid only a part of their subscriptions, but how much plaintiff does not know; but later the same document asserts that these defendants have paid "in fact ⁂ ⁂ ⁂ about $8,400" upon their stock subscriptions. It is then stated that plaintiff continued to be secretary and a director of the Land Company until August 15, 1919, before which date P. P. Anderson had transferred to the defendant J. J. Anderson 10 shares of Land Company stock. The stockholders' meeting was held on the date last mentioned, which plaintiff is said to have been "unable by reason of insufficient notice to attend." At this meeting O'Brien was dropped as secretary and director, and the corporate offices filled by the election of the two Andersons and Lashar.

It nowhere appears how much notice plaintiff had of this meeting, which was held at Bridgeport, Conn.; but the notice therefor is said to have specifically stated that one of the purposes of the meeting was to correct all errors in the minutes of the corporation with respect to "the issuance of shares of the capital stock of this corporation in payment" for 42 acres of land in Fairfield, Conn., and also to correct the certificate of organization, so as "to conform to the facts as to the amount of stock paid for in property and the amount of stock paid for in cash." The notice also stated that one of the objects of the meeting was to amend, alter, or repeal "sections 12 and 16" of the corporate by-laws.

The bill then charges on information and belief that at this meeting the individual defendants "did pass various resolutions purporting to change, alter, and amend the records of the corporation, so as to manufacture false and fraudulent evidence of the payment of their subscriptions, or to furnish a false and fraudulent defense to the action based upon the subscription contract." Further it is charged that "a certain by-law requiring the consent of 70 per cent. of the stockholders to amend" was repealed, and another by-law amended "without a 70 per cent. vote being obtained."

The bill further asserts that, "in an effort to correct the various abuses and neglects of duty on the part of the defendants [plaintiff] has served upon the defendants Lashar and P. P. Anderson a written demand that action be taken to call in the unpaid subscriptions, and [plaintiff] has further protested to the defendants requesting a repeal of the various illegal acts" at the corporate meeting of August 15, 1919. It is also asserted in

common form that at the time of the transactions complained of plaintiff was a shareholder and that the suit is not collusive. In point of fact plaintiff was a resident of New York and all the individual defendants of Connecticut.

The final charge is that the Land Company is "insolvent by reason of certain outstanding notes and obligations, which cannot be paid without the collection of the stock subscriptions owed to the said corporation by" Lashar and P. P. Anderson.

The prayer of the Land Company bill is that a receiver be appointed "over the property and affairs of the defendant corporation, and * * * that a judgment may issue against Percy P. Anderson and Walter B. Lashar, in favor of the Fairfield Park Land Company, for such sum or sums as may upon hearing be shown to be due to the said corporation for the balance of their stock subscriptions."

In the second suit, which may be called the Building Company Case, the bill avers that O'Brien, with the same P. P. Anderson and Lashar, organized at substantially the same time that they launched the Land Company another Connecticut corporation, viz. the Building Company, with a share capital of $10,000, of which each of these three men took in effect one-third, and paid into the treasury, Lashar $1,000, O'Brien $740, and Anderson $500. The business of this concern was to deal in real estate and "all rights pertinent thereto." Plaintiff continued to be secretary and director of the Building Company until August 15, 1919, and is still a stockholder; neither he nor any other shareholder has paid in on stock subscription more than the amounts above stated.

The bill then charges that about April 10, 1918, P. P. Anderson, being the treasurer of the Building Company, "misappropriated and converted to his own use and benefit" $700 belonging to the corporation, and when the same Anderson filed his annual treasurer's report in August, 1919, he said nothing about this $700, and "further failed to account for the sum of $500, being the amount of a mortgage" made to the Building Company by one Hutchinson, and in said report he "falsely states and shows a disbursement of $4,000," when in fact no such sum was "disbursed or paid out."

It is then charged that the Building Company is insolvent by reason of outstanding debts amounting to over $5,000, and is "unable to continue in business * * * by reason of its inability to obtain money or credit" and the failure (of the other shareholders, directors and defendants) to compel the treasurer, Anderson, "to pay into the corporation the moneys misappropriated by him." The bill contains the usual allegations that plaintiff was a stockholder at the time of the transactions complained of, and still is such stockholder, and that the suit is not collusive, and further that plaintiff, "in an effort to correct the various abuses and neglects of duty on the part of the defendants, directors and officers of said corporation, has served upon [the defendants] several notices and protests about the mismanagement and misappropriation of the funds of the corporation [by defendant Anderson], but his protestations were unheeded and ignored."

The prayer of this Building Company bill is that the court appoint "a receiver over the property and affairs" of the corporation, and that "defendant Anderson be compelled to make an accounting to the corporation of his acts as treasurer, and to pay to the corporation the sum or sums found to have been misappropriated and converted by him to his own use and benefit."

James J. O'Brien, of Boston, Mass., pro se.

William H. O'Hara, of Bridgeport, Conn., for defendant corporations.

Arthur M. Marsh, of Bridgeport, Conn. (Philo C. Calhoun, of Bridgeport, Conn., of counsel), for individual defendants.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). What plaintiff conceived to be the substance of his appeal, as shown by as-

signments of error and argument, we have disposed of by the decision filed herein March 24, 1921, upon his motion to "strike out" most of the appeal record. It remains to consider whether his bills in equity, or either of them, shows a present cause of action properly pleaded.

Observing that plaintiff is not a creditor, but shareholder only, that he avers both corporations to be insolvent, and endeavors to allege fraudulent acts on the part of the individual defendants, we have much difficulty in assigning these bills to any recognized category of equitable remedies. As plaintiff has conducted his own cause, and as we think exhausted effort upon a mistaken point of practice, we are not advised, except by the language of the bills, under what head of jurisdiction the court is asked to entertain them.

It seems to us that they are: (1) If taken literally, merely efforts to obtain a receiver, in order to sue in one case for some thousands of dollars of unpaid stock subscriptions, and in the other for either $700 or $1,200 embezzled or converted by P. P. Anderson; (2) they may be intended as stockholders' bills, within the authority of Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, and summarized in Cook on Corporations, § 646; or (3) the endeavor may be to wind up the corporation—this interpretation being consistent with the allegation of insolvency and prayer for receiver.

[1] To take the bills literally, and appoint receivers with powers limited to plaintiff's prayers, would introduce a new and wholly undesirable jurisdiction in equity. The effort has sometimes been made to obtain a receiver for the purpose of doing what a solvent corporation has refused to do, but no reason has been or can be adduced why any such proceeding should be taken with an insolvent concern. Cf. Bartlett v. New York, etc., R. R. Co., 221 Mass. 530, 109 N. E. 452. In this view of the matter there is also a plain lack in the jurisdictional amount as pleaded in respect of the Building Company bill.

[2] Regarded as bills to remedy the frauds of directors, under Hawes v. Oakland, supra, it is plain that in the Building Company Case the bill does not show compliance with equity rule 27 (33 Sup. Ct. xxv) as that regulation (which is old rule 94 [29 Sup. Ct. xxxvii], with slight amendment) is well expounded in Smith v. Chase, etc., Co. (D. C.) 197 Fed. 466.

[3, 4] Pursuing this aspect of the case, the Land Company bill, if supportable as one to redress directors' frauds, quite fails in alleging facts constituting fraud; it being elementary that to merely cry fraud is not to allege it.

There is nothing unlawful in not collecting stock subscriptions at once, and nothing wrong in correcting erroneous or mistaken minutes and certificates, and no facts are alleged which, if true, show that the two Andersons and Lashar have necessarily done anything wrong; furthermore, of course, there would be no reason for entertaining a bill for fraud merely, if such fraud had produced insolvency. Equity should then proceed to wind up the company.

[5] We conclude that these bills must be viewed as an effort by a stockholder as distinct from a creditor to put his corporation into an equitable insolvency proceeding. We held in Maguire v. Mortgage

Co., 203 Fed. 858, 122 C. C. A. 83, that the courts of the United States as courts of equity had no power to entertain a stockholders' winding-up suit by means of a receiver of the corporate affairs, unless there were a statute of the state of incorporation authorizing such action. Cf. Taylor v. Decatur, etc., Co. (C. C.) 112 Fed. 449; Conklin v. United States, etc., Co. (C. C.) 140 Fed. 219; Jacobs v. Mexican, etc., Co. (C. C.) 130 Fed. 589.

[6] Such statute exists in Connecticut. G. S. § 3443 et seq. This act provides (inter alia) that, when there has been any fraud or gross mismanagement in the conduct of a corporation, or whenever its assets are in danger of waste, or whenever any good and sufficient reason exists for the dissolution of such corporation, any stockholder or stockholders owning not less than one-tenth of the capital stock may apply for dissolution and the appointment of a receiver to wind up its affairs.

There is no doubt that the collection of unpaid stock subscriptions is a corporate function, and G. S. § 3432, specifically provides that such subscriptions may be called by the directors "in such proportion and at· such times and places as they think· proper." Yet this provision, like almost every other matter of law, may be so abused or evaded as to constitute fraud. Wherefore, if directors refuse their statutory duty in the premises, a court of equity may in insolvency, through its receiver, itself order such payments to be made (Kroegher v. Calivada, etc., Co., 119 Fed. 641, 56 C. C. A. 257); and in like manner we perceive no reason under such a statute why the District Court in Connecticut could not appoint a receiver for a corporation rendered insolvent by the thefts of one director and condoned by the others, if the amount involved were sufficient.

We conclude, therefore, that this plaintiff could have sued in the court below, had he shown the jurisdictional amount and pleaded a case within G. S. § 3443. This he has not done, and has refused to do after ample opportunity granted for amendments.

Decrees affirmed, with costs.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes