## FUDICKAR et al. v. LOUISIANA LOAN & INV. CO.

(District Court, W. D. Louisiana, Monroe Division. May 12, 1926.)

No. 234.

Corporations ⬤⟹684—Federal court of equity may appoint receiver for foreign corporation, when property is within its district, at suit of stockholders, to preserve the property from mismanagement and waste by its officers, also residents of the district.

While a suit by stockholders for the appointment of a receiver for a corporation ordinarily should be in a court in the state of its domicile, which alone has jurisdiction to decree its dissolution, where all its property is in a district in another state, where its officers and directors also reside, a federal court of equity in that district, having jurisdiction over the persons and property involved, may entertain a suit by stockholders for the appointment of a receiver to preserve the property from alleged mismanagement and waste by its officers and directors.

In Equity. Suit by Ernest Fudickar and others against the Louisiana Loan & Investment Company. On motion to dismiss bill. Denied.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, La., for complainants.

Geo. Gunby, of Monroe, La., for respondent.

DAWKINS, District Judge. Complainants, citizens of the state of Louisiana, brought this suit, on behalf of themselves and such other stockholders as may wish to join herein, for the appointment of a receiver to the defendant, alleging that it is a Delaware corporation, with its "principal office in the city of Wilmington, state of Delaware"; that they are the owners of stock of the par value of $10,750; that the officers of said corporation, particularly its president, secretary-treasurer, and manager, "are jeopardizing the rights of the stockholders and creditors, and particularly the rights of your complainants, by grossly mismanaging and misapplying the property and funds thereof, all of which said property, funds, and assets are located within the jurisdiction of this court, and by committing ultra vires acts, in that" (a) they are operating said business at a great loss; (b) that the corporation "is in sole charge" of the president and secretary-manager, who was drawing salaries of $100 and $250 per month, respectively, which are entirely out of proportion to the services rendered, and in addition thereto are incurring further monthly expenses of $160 per month, and that "the earnings of said corporation amount to practically nothing, and certainly do not amount to such sums as warrants the large expenditures just outlined.

Complainants further show that the said expenses are not paid out of the surplus earnings or net profits, but entirely out of the capital of said corporation, which is thereby being impaired, and is steadily being further impaired, to the great loss and injury of said corporation, its stockholders, and particularly to your complainants"; (c) "that said corporation was organized to engage in the business of lending money, and has ceased to function because of the neglect and mismanagement of those in charge of its affairs," and the sums due and accruing upon its notes, etc., are not being collected, and its funds and property are thereby being dissipated; (d) that those in charge of said corporation have permitted one L. L. Lieber to compromise and settle a large indebtedness to it by transferring to the corporation 200 shares of its own

capital stock, which is ultra vires its powers under the laws of Delaware, the state of its creation; (e) and (f) that the business and affairs are so muddled and confused that it has been impossible for complainants and other stockholders to obtain any information in regard thereto, and that the officers in charge own no stock in said corporation, and hence are without financial interest, are hostile to complainants, and it is impossible to get them to "straighten the corporation affairs."

Complainants further show that they are informed and believe, and, so believing, aver, that a transaction has been agreed upon and a combine made between those in charge of said corporate affairs and one V. V. Lamkin, stockholder, who recently has acquired a large amount of the preferred stock of said corporation, at a price much below par, under the terms of which the said corporation is to be liquidated by consent and agreement, and the remaining assets purchased, either by the said V. V. Lamkin, or those in charge of said corporation and the said V. V. Lamkin, or by a corporation to be formed by them; that the consummation of said transaction will result in a sacrifice of said assets, waste and dissipation thereof, and a total loss to the holders of common stock, in that all funds realized from such liquidation sale will be consumed in payment and retirement of the preferred stock, the holders of which, under the corporate charter attached hereto and made a part hereof, as aforesaid, are entitled to be paid in full the par value of their shares before any amount shall be paid to holders of common stock; and that, "although the complainants have not sufficient information to justify them in charging 'actual fraud' against the officers and directors," yet their conduct has been such as to "constitute a fraud in law" and warrant the court in appointing a receiver, "which complainants believe and aver will result in the salvage to the stockholders of said corporation, and particularly to your complainants, the establishment and revival of the said corporation, and the final resumption of a safe and profitable business."

Complainants further alleged as follows: "That-the funds, assets, and property of the defendant corporation are all located in the Western district of Louisiana, and particularly in Ouachita and Caddo parishes, Louisiana, and within the jurisdiction of this court, and that said defendant corporation has no other property, and that its officers and directors are all residents and citizens of Ouachita parish, in the Western district of Louisiana."

Complainants prayed for the appointment of a receiver, and pending said action that those in charge of the property of said corporation be restrained and enjoined from disposing of, removing, or dissipating its assets. A restraining order was issued and the matter set down for hearing within 10 days, but by consent of the parties the same has been continued from time to time. A motion to dismiss has now been filed, upon the ground that this court "has no jurisdiction over the person of this defendant or the subject-matter of this action." The matter is now to be considered upon the said motion to dismiss.

As is disclosed by the above recital of the substance of the bill of complaint, the respondent corporation is a citizen of the state of Delaware, and this is not a suit by creditors, but by stockholders, complaining of the acts of officers and directors in the disposition and management of its affairs. Under ordinary circumstances, controversies of this kind, involving the internal management of a foreign corporation, can best be considered by the courts of its domicile, where it has its principal business, and where the court's decrees may operate directly upon the corporation and its officers. But in this case it is alleged that all of the "funds, assets, and property of the defendant corporation" are located within, and "its officers and directors are all residents and citizens" of, Louisiana, within the jurisdiction of this court. It would seem, therefore, that actually no other court could exercise the necessary power to grant the relief sought, and, even if a receiver were appointed in Delaware, that proceeding would have to be supplemented by the appointment of an ancillary receiver here. There can be no doubt but this court would have jurisdiction of such ancillary proceeding. In such circumstances, should the complainants be driven to seeking relief in Delaware, when, according to the bill it would be a mere matter of form precedent to the asking of this court the identical relief now sought?

As heretofore stated, courts of equity are reluctant to appoint receivers to foreign corporations, where the action will in effect amount to a dissolution of such concerns, and as a rule there must be some clear statutory authority for such a proceeding; the reason being, as stated, that the courts of the state of creation are better able to deal with the internal affairs of their own corporations, and to control, if necessary, their dissolution and liquidation. But, regardless of statute, courts of equity possess certain inherent powers for giving relief, where it is apparent that no

other tribunal will be able to exercise jurisdiction to that end. Each case stands upon its own facts, but in my opinion the right of the court to act or not does not involve a question of jurisdiction, because, so long as it has the res within its reach, a receivership in such circumstances being mainly a proceeding in rem, it may administer the same for all who have a beneficial interest therein. The main inquiry, as I perceive it, is as to the nature of the relief sought, and as to whether or not the court of domicile, which is to be preferred, can reasonably afford it. See Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas. 74. In dealing with a somewhat similar issue, the Supreme Court of Connecticut, in Low v. R. P. K. Pressed Metal Co., 91 Conn. 91, 99 A. 1 (reported in L. R. A. 1917D, 291, with extended notes), said:

"The plaintiff relies upon authorities holding that, because the courts of one state cannot decree the dissolution of corporations created by another state, they will not entertain an original action in the nature of a stockholders' suit to wind up the business of a foreign corporation. Republic Mountain Silver Mines v. Brown, 58 F. 644, 7 C. C. A. 412, 24 L. R. A. 776, 19 U. S. App. 203; Sidway v. Missouri Land & Live Stock Co. (C. C.) 101 F. 481; Maguire v. Mortgage Co. of America, 203 F. 858, 122 C. C. A. 83. Here again may be found expressions tending to support the plaintiff's claim that the courts of one state are absolutely without original jurisdiction to wind up the local business of a foreign corporation at the instance of stockholders; but the common practice of appointing so-called ancillary receivers in such cases demonstrates that courts do have jurisdiction over the subject-matter of winding up the local business of foreign corporations in receivership proceedings, whether in a stockholders' suit or upon a creditors' bill. It would be an intolerable proposition to assert that any local business was beyond the original equity jurisdiction of our courts, merely because it was conducted by a foreign corporation. The principle that courts will not interfere in what are vaguely called the internal affairs of a foreign corporation must yield to the larger and more important principle that all who choose to engage in business within the state, whether under a corporate franchise or not, necessarily subject such business to the jurisdiction of the courts as fully as if it were conducted by our own citizens or corporations."

There is a distinction between the appointment of a receiver for a corporation, as such, which has for its purpose the dissolution or liquidation of the business, and a receiver appointed for specific property to prevent its waste or dissipation by those in possession. The latter does not and cannot, in the case of a foreign corporation, produce a dissolution or liquidation; it may still exist, even though it has no property. However, I pitch my conclusion in the present case upon the alleged facts that all the property, officers, and directors are within the jurisdiction of this court, and that it alone is competent to give relief against the ultra vires acts and extreme abuses alleged in the bill.

I am not unmindful of the doctrine announced in cases like Maguire v. Mortgage Co., 203 F. 858, 122 C. C. A. 83, and authorities therein cited, in which the broad statement is made that a court of equity is without jurisdiction to appoint a receiver for a foreign corporation at the instance of stockholders. None of these cases, so far as I have been able to find, involve any such condition as is recited in the present suit. On the contrary, Judge Noyes, in the Maguire Case, indicates rather strongly that, if sufficient facts had been alleged to justify interference, relief would have been given by that court, when he says:

"There is nothing in the present bill to show that the established practice would fail to afford the complainant adequate relief, and we are therefore not called upon to determine whether, under any extraordinary circumstances, the District Court as a court of equity might intervene to protect property of a foreign corporation while awaiting action in the court of primary jurisdiction."

I think the bill does allege facts sufficient, if proven, to justify this court in appointing a temporary receiver for the property and the estate of the defendant corporation located within its jurisdiction, and the motion to dismiss will therefore be overruled.